IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM SPEER, | § | |
| _Plaintiff,_ | § | |
| | § | CIV. ACT. NO. 4:23–CV–03958 |
| v. | § | **DEATH PENALTY CASE** |
| | § | |
| BOBBY LUMPKIN et al., | § | |
| _Defendants._ | § | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF
SPEER'S MOTION FOR A PRELIMINARY INJUNCTION AND/OR
STAY OF EXECUTION WITH BRIEF IN SUPPORT**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

*Counsel of Record

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*STEPHEN M. HOFFMAN
Assistant Attorney General
Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
(512) 936–1400

_____

ATTORNEYS FOR DEFENDANTS

_____

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................... i

TABLE OF AUTHORITIES .......................................................... iii

RESPONSE IN OPPOSITION TO MOTION FOR STAY AND/OR
    PRELIMARY INJUNCTION ................................................... 1

STATEMENT OF THE CASE ....................................................... 5

    I.    Facts of the Crime ........................................................ 5

    II.    Punishment Evidence .................................................... 7

    III.    Conviction and Postconviction Proceedings ....................... 8

ARGUMENT ......................................................................... 12

    I.    Speer's Dilatoriness Requires the Summary Denial of
        His Motion. ............................................................... 12

    II.    Alternatively, the Court Should Deny a Stay or
        Injunction Because the Equities Do Not Favor Speer. ..... 16

        A.    Standard of review ............................................. 16

        B.    Speer has not made a strong showing that he
            will succeed on the merits. .................................. 18

            1.    The Court must time bar any facial or
                freestanding attack on Texas's lethal injection
                protocol, claims that the execution drugs are
                expired, or claims based on state statute. ........ 18

            2.    Speer lacks a valid claim under the Eighth
                Amendment and Article 43.24. ........................... 19

            3.    Texas's postconviction procedures are not
                "fundamentally inadequate" and do not violate
                due process. ................................................. 27

            4.    Speer seeks improper mandamus relief. .......... 31

    **C.**    **Speer will not suffer irreparable harm**........................ **33**

    **D.**    **The State and the public have a strong interest in seeing the state court judgment carried out.** ....... **34**

**CONCLUSION** ................................................................... **36**

**CERTIFICATE OF SERVICE** ....................................... **38**

## TABLE OF AUTHORITIES

## Cases

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) .................................................. 32

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ...................................................... 16, 33

*Barr v. Lee*, 140 S. Ct. 2590 (2020) ........................................................ 4, 22, 23

*Baze v. Rees*, 553 U.S. 35 (2008) ......................................................... 22, 24, 34

*Beazley v. Johnson*, 242 F.3d 248 (5th Cir. 2001) .......................................... 28

*Berry v. Epps*, 506 F.3d 402 (5th Cir. 2007) .................................................... 13

*Bible v. Davis*, 138 S. Ct. 2700 (2018) ............................................................. 3

*Bible v. Davis*, 4:18–CV–1893, 2018 WL 3068804 (S.D. Tex. Jun. 21, 2018)…… ................................................................................... 3, 12, 36

*Bible v. Davis*, 739 F. App'x 766 (5th Cir. 2018) .................................... 3, 13, 34

*Brown v. Livingston*, 457 F.3d 390 (5th Cir. 2006) ......................................... 13

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ............................................passim

*Buxton v. Collins*, 925 F.2d 816 (5th Cir. 1991) .............................................. 17

*Calderon v. Thompson*, 52 U.S. 538 (1998) ......................................... 17, 34, 35

*Cromartie v. Shealy*, 941 F.3d 1244 (11th Cir. 2019) ..................................... 28

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019) .......................................... 35

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) ........................................................................... 20, 27, 28, 30

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ....... 15

*Estelle v. McGuire*, 502 U.S. 62 (1991) ..................................................... 21, 28

*Ex parte Chi*, 256 S.W.3d 702 (Tex. Crim. App. 2008) ............................... 20, 30

*Ex parte Murphy*, No. AP-77,116, 2023 WL 6586973 (Tex. Crim. App. Oct. 9, 2023) .............................................................................................. 20, 30

*Ex parte Speer*, No. 59,101-01, 2004 WL 7330992 (Tex. Crim. App. June 30, 2004) ...................................................................................................... 8

*Ex parte Speer*, No. WR-59,101-02, 2010 WL 724430 (Tex. Crim. App. Mar. 3, 2010) ...................................................................................................... 9

*Ford v. Wainwright*, 477 U.S. 399 (1986) ........................................................ 29

*Garcia v. Castillo*, 431 F. App'x 350 (5th Cir. 2011) ....................................... 18

*Glossip v. Gross*, 576 U.S. 863 (2015) .............................................................. 22

*Gomez v. United States Dist. Court*, 503 U.S. 653 (1992) ................................ 35

*Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004) .................................. 13, 14, 30

*Herrera v. Collins*, 506 U.S. 390 (1993) ........................................................... 17

*Hill v. McDonough*, 547 U.S. 573 (2006) ................................................. passim

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ....................................................... 17

*Kerr v. Thaler*, 384 F. App'x 400 (5th Cir. 2010) ............................................ 23

*Kincy v. Livingston*, 173 F. App'x 341 (5th Cir. 2006) ..................................... 13

*Martel v. Clair*, 565 U.S. 648 (2012) ................................................................ 36

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................ 10

*Moye v. Clerk, Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973) . 31

*Murphy v. Tex.*, No. 23-5740, 2023 WL 6573352 (U.S. Oct. 10, 2023) ...... 20, 25

*Murray v. Giarratano*, 492 U.S. 1 (1989) ......................................................... 27

*Nelson v. Campbell*, 541 U.S. 637 (2004)................................................. 13, 16, 34

*Neville v. Johnson*, 440 F.3d 221 (5th Cir. 2006) ............................................ 13

*Nken v. Holder*, 556 U.S. 418 (2009)................................................................. 17

*Norton v. Enns*, 2:14-CV-0040, 2014 WL 3947158 (N.D. Tex. Aug. 12, 2014) 31

*Ochoa v. Collier*, 802 F. App'x 101 (5th Cir.)..................................................... 33

*Pennsylvania v. Finley*, 481 U.S. 551 (1989) ..................................................... 27

*Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010) ............................................. 22

*Reed v. Goertz*, 598 U.S. 230 (2023) ........................................................... 15, 30

*Reese v. Livingston*, 453 F.3d 289 (5th Cir. 2006)............................................. 13

*Rhines v. Weber*, 544 U.S. 269 (2005) ................................................................ 36

*Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012) ............................................. 23

*Rivas v. Thaler*, 432 F. App'x 395 (5th Cir. 2011)............................................. 23

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) ............................................. 15

*Sells v. Livingston*, 561 F. App'x 342 (5th Cir. 2014)....................................... 18

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014) ............................................. 18

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013) ...................................... 23, 25

*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................................... 28

*Smith v. Johnson*, 440 F.3d 262 (5th Cir. 2006) ............................................... 13

*Speer v. Dir., TDCJ-CID*, No. 2:04CV269, 2018 WL 11350010 (E.D. Tex. June 25, 2018) .......................................................................................... 7, 8

*Speer v. Dir., TDCJ-CID*, No. 2:04CV269, 2018 WL 11350042 (E.D. Tex. Sept. 14, 2018) ........................................................................................ 7, 11

*Speer v. Lumpkin*, 824 F. App'x 240 (5th Cir. 2020) ........................................ 11

*Speer v. State*, No. 74,253, 2003 WL 22303983 (Tex. Crim. App. Oct. 8, 2003) 8

*Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015) ............................................. 10

*Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285 (S.D. Tex. Aug. 20, 2019) ........................................................................................... 18, 24

*Tercero v. Stephens*, 738 F.3d 141 (5th Cir. 2013) .......................................... 29

*Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012) ................................................. 23

*Trevino v. Thaler*, 569 U.S. 413 (2013) ............................................................ 10

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020) ..................................... 36

*Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008) .................................................. 18

*Waters v. Texas*, 747 F. App'x 259 (5th Cir. 2019) .......................................... 32

*Wheat v. Johnson*, 238 F.3d 357 (5th Cir. 2001) .............................................. 28

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017) ......................... 15, 19, 24, 26

*Whitaker v. Livingston*, 597 F. App'x 771 (5th Cir. 2015) .............................. 13

*Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013) ..................................... 32

*White v. Johnson*, 429 F.3d 572 (5th Cir. 2005) .............................................. 13

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ................................................. 23

## Constitutional Provisions & Statutes

18 U.S.C. § 3626(a)(1)(A) ................................................................................. 32

28 U.S.C. § 2253 ................................................................................................ 16

42 U.S.C. § 1983 ..................................................................................... 2, 13, 18

Tex. Code Crim. Pro. art. 11.05...........................................................1, 12, 21

Tex. Code Crim. Pro. art. 11.071, § 5..................................................... 9

Tex. Code Crim. Pro. art. 43.24.....................................................passim

Tex. Code Crim. Pro. art. 713 (1856) ................................................ 14

## RESPONSE IN OPPOSITION TO MOTION FOR STAY AND/OR PRELIMARY INJUNCTION

William Speer was incarcerated for life in TDCJ-CID for murdering his friend's father. While incarcerated, Speer—a prospective member of the Texas Mafia prison gang—carried out a hit on inmate Gary Dickerson at the direction of a gang leader. Speer later boasted that he made Dickerson's "parole come early," admitted to "killing a snitch," and recounted telling the dying Dickerson "don't fuck with the Texas Mafia, not even in hell." Speer was convicted and sentenced to death for this second murder.

Pursuant to the order of the trial court, Speer is scheduled to be executed sometime after 6:00 P.M. on October 26, 2023. As shown below, Speer has already unsuccessfully availed himself of the full panoply of state and federal appeals available to death-row inmates in Texas, including a subsequent state writ proceeding and federal habeas proceedings that stretched out over seventeen years. Since his execution was set, he has also filed two dilatory mandamus actions in the Texas Court of Criminal Appeals (CCA); both were rejected.

After the trial court set Speer's execution date, Speer belatedly filed a state application for a writ of habeas corpus under Texas Code of Criminal Procedure Article 11.05, alleging that the prison's use of the lethal injection drugs violated the Texas Constitution, the United States Constitution, Texas

Code of Criminal Procedure Article 43.24, and a slew of state laws governing pharmaceuticals and controlled substances. He further asserted that the lethal injection drugs were damaged in a recent fire. The trial court denied the application on the merits. It held that Speer's complaint was speculative and failed to meet the Supreme Court's standards. The trial court further noted that the CCA, the Western District of Texas, and the Supreme Court itself had allowed Jedidiah Murphy's execution to proceed on October 10, 2023—entirely uneventfully—over similar protests.

A mere *eight days* before his execution, Speer filed the instant federal civil rights lawsuit.[1] Complaint Pursuant to 42 U.S.C. § 1983 (Compl.), ECF No. 1. In his complaint, Speer claims that he has a liberty interest created by Article 43.24, "which guarantees condemned prisoners freedom from the infliction of torture, unnecessary pain, and ill treatment" and that "Texas has deprived [Speer] of his liberty interest without adequate process, in violation of the procedural Due Process Clause of the Fourteenth Amendment." Compl. at 28–20.

In conjunction with his complaint, Speer now moves for a preliminary injunction or a stay of execution. Pl.'s Emergency Mot. for a Prelim. Inj. (Mot.), ECF No. 10. Speer did not bother filing the instant motion until *three days*

---

[1]     On the same day, Speer filed yet another dilatory state habeas application.

before his execution and only did so after being ordered by the Court. Briefing Ord., ECF No. 9. However, no injunction or stay of execution is warranted. Speer's request is merely abusive delay, as he moves for a stay only three days from his scheduled execution, citing to a fire that occurred almost two months ago, statutory language that has been around for years, and an execution policy materially unchanged in more than decade. Speer offers no compelling excuse for waiting until last-minute litigation to finally bring his claims. Therefore, the Court should deny a stay pursuant to District, Circuit, and Supreme Court precedent. *Bible v. Davis*, 4:18–CV–1893, 2018 WL 3068804 (S.D. Tex. Jun. 21, 2018) (Hoyt, J.), *aff'd*, 739 F. App'x 766 (5th Cir. 2018), *cert. and stay denied* 138 S. Ct. 2700 (2018).

But even if his lawsuit was not dilatory, Speer fails to show any entitlement to a stay. He is not likely to succeed on the merits for several reasons. Most of his arguments are time-barred.[2] His assertions that the lethal injection drugs are expired or "fire-blighted" are rebutted by Defendants' recent retesting of the drugs, which verified the drugs' potency and sterility. And Speer's claim to a liberty interest under Article 43.24 fails because the CCA has authoritatively construed that liberty interest to be the same one guaranteed by the Eighth Amendment and Supreme Court precedent, and

---

[2]    It is unclear if Speer has exhausted his due process claim, and the Defendants reserve any exhaustion defense.

Speer's claim abjectly fails under the federal standard. Texas's postconviction procedures are also plainly adequate under the Due Process Clause. But perhaps most importantly, the Supreme Court rejected substantially similar arguments in Jedidiah Murphy's case just two weeks ago. Nothing has changed.

Further, Speer cannot show irreparable harm. This is a § 1983 action, so Speer necessarily does not challenge the fact that he is being put to death (if so, his suit would sound in habeas). Rather, the only harm that can be considered is that he *may* experience some pain during the execution protocol. But, as shown below, the Supreme Court has held that the Constitution does not require a painless execution, and some pain is attendant to all executions.

And regardless of whether the Court agrees that Speer's dilatoriness presents an independent barrier to relief, that dilatoriness must still be considered in the weighing of the equities, and it cuts against Speer. Speer has the burden of persuasion on his stay request, and he is required to make "a clear showing" that he is entitled to a stay of execution. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "Last-minute stays should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019); *see also Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020). As the Supreme Court has explained:

> "[T]he last-minute nature of an application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay." *Hill*, 547 U.S. at 584

4

(internal quotation marks omitted). . . . If litigation is allowed to proceed, federal courts "can and should" protect settled state judgments from "undue interference" by invoking their "equitable powers" to dismiss or curtail suits that are pursued in a "dilatory" fashion or based on "speculative" theories. [*Hill*, 547 U.S. at 584–85].

*Bucklew*, 139 S. Ct. at 1134 (footnote omitted).

Speer fails to make the requisite showing to justify interference by the federal courts. More than twenty-six years have passed since Speer choked the life out of Gary Dickerson. The ensuing delay in carrying out Speer's sentence should weigh heavily in the evaluation of this motion, and justice should be denied no longer. Accordingly, Speer's request for a preliminary injunction or a stay should be denied.

## STATEMENT OF THE CASE

### I.   Facts of the Crime

On federal habeas review, a magistrate set forth the facts of the crime:

On July 11, 1997, a Texas prison inmate named Gary Dickerson was strangled to death in his cell at the Barry Telford Unit in Bowie County, Texas. The events leading to his murder were as follows: A member of an African-American gang within the prison had given Dickerson money to buy contraband cigarettes from an inmate named James Baker. Prison authorities confiscated the money from Dickerson, however, before he could purchase the cigarettes. In order to stay square with the African-American gang, Dickerson told Baker to give the cigarettes directly to the African-American gang member without payment. Dickerson threatened to inform the authorities about a large shipment of contraband tobacco Baker was about to receive if Baker did not comply with his request.

5

Inmate Michael Constandine, the leader of a prison gang called the Texas Mafia, had also become involved with Baker's smuggling operation. Constandine himself owed money to a prison gang called the Texas Syndicate. To raise money, he decided to obtain a cut of Baker's tobacco shipment. Constandine threatened Baker with physical harm if he did not agree.

When the tobacco shipment was intercepted by authorities, all three gangs believed that Dickerson had told the authorities about Baker's operation. Dickerson asked to be placed in protective custody, and his request was granted. After a week, however, he was returned to the general population when he proved unwilling to provide further information. Within a day of being returned, he was killed.

Constandine testified that he met with three people to decide what action to take against Dickerson. Two of them were gang members: Jessie Barnes and Anibal Canales. The third was Speer, who was not a member of the gang, but was being considered for membership. Constandine ordered Speer and Canales to kill Dickerson. While Barnes acted as lookout, Speer and Canales went to Dickerson's cell on the pretext of smoking a cigarette. As Dickerson bent down to blow smoke in the vent below his toilet, Speer reached over and placed him in a choke hold until he eventually stopped breathing. Speer later recounted to fellow Texas Mafia members that he choked Dickerson so hard that he crushed something in his throat and that he told Dickerson as he was dying, "don't fuck with the Texas Mafia, not even in hell." Speer also wrote a letter to fellow inmate and prospective gang member David Ellis describing the murder. In that letter, identified by several Texas Mafia members as having been written by Speer, Speer said:

> I'm in Seg for killing a snitch. He may not have snitched on the 240 packs like the police say, but he had my family's name in his mouth in 1-Building, so I made his parole come early! The Texas Mafia is not no joke. We play the game and we play to win!

6

*Speer v. Dir.*, *TDCJ-CID*, No. 2:04CV269, 2018 WL 11350010, at *2 (E.D. Tex.

June 25, 2018) (citations omitted), *report and recommendation adopted*, No.

2:04CV269, 2018 WL 11350042 (E.D. Tex. Sept. 14, 2018).

## II.   Punishment Evidence

The magistrate also provided a summary of the sentencing phase:

> In addition to the evidence presented during the guilt/innocence phase of the trial, the State presented evidence at the punishment phase of the trial regarding the impact Dickerson's murder had on his family. Gail Martin, one of Dickerson's four siblings, testified about the close relationship Dickerson had with his family, and how his death devastated her, her mother, and her siblings.
>
> The State then presented evidence concerning a prior capital murder committed by Speer. Speer was serving a life sentence when he murdered Dickerson. Franklin Manyoma, Speer's co-conspirator who himself received a seventy-five-year sentence, described in detail the murder of their friend's father, Jerry Collins, back in 1990. About a month before the murder, Jerry Collins's son, John, and Manyoma had cashed close to nine hundred dollars worth of checks they had stolen from Jerry Collins's checkbook. Jerry Collins found out, became angry, and demanded that the boys repay the amount or he would turn them over to the police. After failing to come up with a plan to repay the money, Speer volunteered to help his two friends by murdering Jerry Collins. Speer stole a handgun from his mother's car, and, late one night, Manyoma drove Speer to Jerry Collins's house where John Collins purposely left a window unlocked. Manyoma waited in the car while Speer entered the house through the window, approached Jerry Collins while he was sleeping, and shot him in the head. Speer then returned to the car, where he calmly described the murder to Manyoma as they drove away.
>
> [. . .]

7

In their punishment case, the defense presented the testimony of two prison chaplains in an attempt to demonstrate that Speer was no longer a future danger to society. James Strickland and Gary Nixon, both of whom had spent considerable time ministering to Speer during his incarceration, testified generally about their belief that Speer was remorseful and a sincerely "changed man" who hungered "to know more about the Lord" and "[h]ow to live by His rules." Both testified they did not believe Speer to be a danger to society, and that he could be beneficial to the prison by sharing the gospel with other inmates.

*Speer*, 2018 WL 11350010, at *2–3 (footnote and citations omitted).

## III. Conviction and Postconviction Proceedings

Speer was convicted and sentenced to death in Bowie County, Texas, for Dickerson's murder. *State v. Speer*, 2001 WL 36119167 (Tex. Dist. Oct. 30, 2001). The CCA affirmed Speer's conviction and sentence. *Speer v. State*, No. 74,253, 2003 WL 22303983 (Tex. Crim. App. Oct. 8, 2003).

While his direct appeal was still pending, Speer filed a state habeas application in the trial court. ROA.19-70001.1443–72; SHCR.27–56.[3] The CCA adopted the trial court's findings and conclusions of law and denied habeas relief following its own review. *Ex parte Speer*, No. 59,101-01, 2004 WL 7330992 (Tex. Crim. App. June 30, 2004).

---

[3]      "RR" refers to the reporter's record of transcribed trial proceedings, preceded by volume number and followed by page number(s). "CR" refers to the clerk's record, followed by page number(s). "SX" refers to the State's exhibits, followed by exhibit number. "SHCR" refers to the state habeas clerk's record—the transcript of pleadings and documents filed with the court during Speer's initial state habeas proceeding—followed by page number(s). "Supp. SHCR" refers to the supplemental state habeas clerk's record—that pertaining to Speer's second state habeas proceeding—followed by page number(s). "ROA.____" refers to the Fifth Circuit's record on appeal in the specified cause, followed by page number(s).

Speer then filed a habeas petition in the federal district court. ROA.19-70001.26–58; First Mot. for Writ of Habeas Corpus, *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF No. 6. After obtaining a stay from the court to allow him to exhaust new claims, Speer returned to state court and filed a subsequent habeas application. ROA.19-70001.177–81; *Speer v. Dretke*, No. CIV. A. 2:04CV269, 2008 WL 2065798 (E.D. Tex. May 13, 2008). The CCA remanded the case to the trial court for factual development and credibility determinations. *Ex parte Speer*, No. WR-59,101-02, 2008 WL 4803515 (Tex. Crim. App. Nov. 5, 2008). The trial court determined that Speer's new claims were available when he filed his first state habeas application and that he failed to satisfy the successive writ requirements of Texas Code of Criminal Procedure Article 11.071, Section 5. Supp.SHCR.169–84, 228. The CCA dismissed Speer's application as an abuse of the writ. ROA.19-70001.209–10; *Ex parte Speer*, No. WR-59,101-02, 2010 WL 724430 (Tex. Crim. App. Mar. 3, 2010).

Speer then filed an amended federal petition. ROA.19-70001.215–314; Am. Pet., *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF No. 31. The magistrate issued a report and recommendation that Speer's petition should be denied. ROA.19-70001.476–500; Report and Recommendation, *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF No. 53. The district court adopted the magistrate's recommendation and denied Speer federal habeas

relief. ROA.19-70001.501; Ord. & J., *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF No. 54. The court then granted and denied in part Speer's motion for a certificate of appealability (COA). ROA.19-70001.511–12; COA Ord., *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF No. 58. Then, Speer's federal habeas counsel, who was also his state habeas counsel, filed a motion in the Fifth Circuit to withdraw. *Speer v. Stephens*, 781 F.3d 784, 785 (5th Cir. 2015). The Fifth Circuit remanded the case to the district court solely for the appointment of supplemental counsel to consider whether Speer could establish cause and prejudice under *Martinez*[4] and *Trevino*[5] for any ineffective-assistance-of-trial-counsel ("IATC") claims that should have been brought on state habeas review. *Id.* at 786.

Subsequently, the district court appointed Speer supplemental counsel and granted him funding for a mitigation expert. ROA.19-70001.521, 539; *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF Nos. 61 & 67. Speer then filed an amended federal petition. ROA.19-70001.610–1533; *Speer v. Dretke*, No. CIV. A. 2:04CV269 (E.D. Tex.), ECF Nos. 88 & 89. The magistrate issued a report and recommendation that Speer's amended petition be denied. ROA.19-70001.2069–102; *Speer v. Dir.*, *TDCJ-CID*, No. 2:04CV269, 2018 WL 11350010 (E.D. Tex. June 25, 2018). The district court adopted the report and

---

[4]     *Martinez v. Ryan*, 566 U.S. 1 (2012).

[5]     *Trevino v. Thaler*, 569 U.S. 413 (2013).

recommendation and denied Speer habeas relief and a COA. ROA.19-70001.2268–74; *Speer v. Dir.*, *TDCJ-CID*, No. 2:04CV269, 2018 WL 11350042 (E.D. Tex. Sept. 14, 2018).

Speer then proceeded to the Fifth Circuit. The Fifth Circuit affirmed the district court's judgment with respect to the two claims on which the district court previously granted a COA and granted a COA on Speer's IATC claim. *Speer v. Lumpkin*, 824 F. App'x 240 (5th Cir. 2020). The Fifth Circuit eventually affirmed the district court's denial of Speer's IATC claim. *Speer v. Lumpkin*, 845 F. App'x 345, 347 (5th Cir. 2021). The Fifth Circuit subsequently granted panel rehearing, withdrew its prior opinion, and affirmed the district court's decision. *Speer v. Lumpkin*, 860 F. App'x 66 (5th Cir. 2021). The Supreme Court denied certiorari review. *Speer v. Lumpkin*, 142 S. Ct. 2818 (2022).

On July 17, 2023, the 5th District Court of Bowie County, Texas, issued an order setting Speer's execution for October 26, 2023. After his execution was set, Speer filed a mandamus action in the CCA seeking to withdraw the death warrant on September 21, 2023, and another mandamus action in the CCA seeking to disqualify the prosecutor on September 27, 2023. *Ex parte Speer*, Nos. WR-59,101-03 & -04 (Tex. Crim. App.). The CCA denied the mandamus actions on October 20th and 18th, respectively.

11

On October 4, 2023, Speer filed an original state writ application in the trial court under Texas Code of Criminal Procedure Article 11.05 arguing that his method of execution was unconstitutional and that it violated various state law provisions. On October 12, 2023, the trial court denied the Article 11.05 application, finding that Speer's claim was speculative and that he could not show his method of execution was unconstitutional. *Ex parte Speer*, No. 99F0506-005, slip op. at 2 (5th Jud. Dist. Ct., Bowie Cty., Tex. Oct. 12, 2023). Speer has filed a motion for leave to file an original writ in the CCA challenging the trial court's decision. *Ex parte Speer*, Nos. WR-59,101-05 (Tex. Crim. App.). That motion remains pending.

This civil rights lawsuit followed on October 18, 2023. Compl.

## ARGUMENT

### I. Speer's Dilatoriness Requires the Summary Denial of His Motion.

In *Hill*, the Supreme Court stated that "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" 547 U.S. at 585. This Court should heed the Supreme Court's exhortation. Both this District and the Fifth Circuit have previously endorsed the denial of a stay of execution based solely on a lack of timeliness, independent of other factors, without considering the merits of the underlying claims. *See Bible*, 2018 WL 3068804, at *5 (capital plaintiff's "unnecessary delay in filing suit and seeking equitable relief is an

independent basis on which the Court will deny relief"); *Bible*, 739 F. App'x at 770 ("We see no error in the district court's conclusion that [plaintiff]'s suit constitutes a dilatory tactic and therefore warrants no equitable relief."); *see also Berry v. Epps*, 506 F.3d 402, 404–05 (5th Cir. 2007) (per curiam); *White v. Johnson*, 429 F.3d 572, 573–74 (5th Cir. 2005) (per curiam); *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (per curiam); *Brown v. Livingston*, 457 F.3d 390, 391 (5th Cir. 2006); *Smith v. Johnson*, 440 F.3d 262, 263–64 (5th Cir. 2006); *Reese v. Livingston*, 453 F.3d 289, 290–91 (5th Cir. 2006); *Neville v. Johnson*, 440 F.3d 221, 222–23 (5th Cir. 2006) (per curiam). In the lethal-injection context, petitioners who dilatorily raise previously available claims immediately before their execution are not entitled to a stay regardless of whether they state a cognizable claim under § 1983.

Speer's plainly dilatory attempts at obtaining an injunction or stay of execution are of the type the Supreme Court has cautioned against. *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004). Such dilatory tactics should not be countenanced, and Speer is not entitled to a stay at this late date. *Id.*; *see Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015) ("If [plaintiff] were to wait until an execution date was set to file this action, he would be unable to stay the execution under this court's clearly established precedent to pursue these claims."); *Kincy v. Livingston*, 173 F. App'x 341, 342–43 (5th Cir. 2006).

Instead of bringing this suit in a timely manner, Speer did "the very thing the plaintiff is not entitled to do . . . namely, to wait until his execution is imminent before suing to enjoin the state's method of carrying it out." *Harris*, 376 F.3d at 417 (citation omitted). Specifically,

> [b]y waiting until the execution date was set, [Speer] left the state with a [Hobson's] choice: It could either accede to [his] demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the [Constitution]; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under [Speer's] scheme, and whatever the state's choice would have been, it would have been the timing of [his] complaint, not its substantive merit, that would have driven the result.

*Id*. "By waiting as long as he did, [Speer] leaves little doubt that the real purpose behind his claim[s] is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Id*. at 418.

Here, Speer asserts a due process violation based on a purported lack of procedures necessary to vindicate a liberty interest created by Texas Code of Criminal Procedure Article 43.24. But Article 43.24 has existed in various forms since 1856 and thus was in existence well before Speer was sentenced to death by lethal injection almost twenty-two years ago. Tex. Code Crim. Pro. art. 713 (1856) ("Old Code").

Speer points to the TDCJ fire forming the factual basis of his complaint, Compl. at 5, 9–12, but Speer cannot challenge the state court's application of Article 43.24 to his specific case without running afoul of the *Rooker-Feldman*

doctrine, which "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments." *Reed v. Goertz*, 598 U.S. 230, 235–36 (2023) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Nevertheless, even if the Court were to consider Speer's dilatoriness since the TDCJ fire, almost two months have elapsed since the fire. Compl. at 5 (fire occurred on August 25, 2023). And Jedidiah Murphy filed his lethal-injection lawsuit raising substantially the same claims as Speer on October 4, 2023— two weeks before the instant lawsuit. Compl., *Murphy v. Lumpkin, et. al.*, No. 1-23-cv-01199-RP (W.D. Tex. Oct. 6, 2023), ECF No. 1.

Moreover, while Speer asserts that his claim is limited to contesting the procedures available to vindicate his purported liberty interest under Article 43.24, *see* Compl. at 6 n.1, his pleadings belie that argument. Speer raises an old claim about the TDCJ using expired drugs that was decided adversely to him in federal court years ago. *Compare* Compl. at 13–15 & Mot. at 4–5, 13–14 *with Whitaker v. Collier*, 862 F.3d 490, 499 (5th Cir. 2017) ("claim that using compounded pentobarbital after its [BUD or Beyond Use Date] risks severe pain [ ] does not include sufficient factual assertions to survive a motion to dismiss."). And Speer references litigation in Travis County where death-row inmates seek to show that the prison's use of the execution drugs is impermissible under various state statutes. Comp. at 20–24; Mot. at 13–14.

But the statutes underlying this complaint have also been available for years. Opp. Stay at 7–8, *Murphy v. Lumpkin, et. al.*, No. 1-23-cv-01199-RP (W.D. Tex.), ECF No. 7 (detailing effective dates of the statutes). Accordingly, this Court should refuse to countenance Speer's dilatoriness and follow the Supreme Court's direction in *Hill* by denying a stay or injunction solely based on lack of timeliness without considering the merits.

## II.   Alternatively, the Court Should Deny a Stay or Injunction Because the Equities Do Not Favor Speer.

### A.   Standard of review

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 584. "It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id*. (citing *Nelson*, 541 U.S. at 649–50). "It is well-established" that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2). Indeed, "[a]pplications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether

16

plenary review and a stay are warranted." *Id*. To demonstrate an entitlement to a stay, a petitioner must demonstrate more than "the absence of frivolity" or "good faith" on the part of petitioner. *Id*. at 892–93. Rather, the petitioner must make a substantial showing of the denial of a federal right. *Id*. In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Id*. at 893. The State's "powerful and legitimate interest in punishing the guilty," as well as its interest in finality, must also be considered, especially in a case such as this where the State has for years borne the "significant costs of federal habeas review." *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (the State has an important interest in the timely enforcement of a sentence).

Thus, in deciding whether to grant a stay of execution, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir. 1991). "In a capital case, the movant is not always required to show a probability of success on the merits, but he must

17

present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities[,] i.e., the other three factors[,] weighs heavily in favor of granting a stay." *Garcia v. Castillo*, 431 F. App'x 350, 355 (5th Cir. 2011) (cleaned up); *see Sells v. Livingston*, 561 F. App'x 342, 344 (5th Cir. 2014).

## B. Speer has not made a strong showing that he will succeed on the merits.

### 1. The Court must time bar any facial or freestanding attack on Texas's lethal injection protocol, claims that the execution drugs are expired, or claims based on state statute.

The Fifth Circuit holds that a statute of limitations applies to § 1983 method-of-execution challenges, and such attacks are appropriately filed either after a plaintiff's conviction and sentence become final on direct review, or the date that an execution protocol change becomes effective. *See Walker v. Epps*, 550 F.3d 407, 411–15 (5th Cir. 2008). Because § 1983 has no statute of limitation, Texas' two-year statute for personal-injury actions governs this challenge. *Whitaker*, 862 F.3d at 494. In this case, the statute of limitations began to run on the later of the two relevant dates—when the protocol changed July 9, 2012, *see Sells v. Livingston*, 750 F.3d 478, 480–81 (5th Cir. 2014)—and expired on July 9, 2014. *See, e.g.*, *Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285, at *4 n.8 (S.D. Tex. Aug. 20, 2019) ("The defendants convincingly argue that Swearingen's claims are time-barred. A two-year limitations period

18

exists for the relevant portions of Texas' protocol. Despite recent changes to an unrelated portion of the Texas protocol, the core issues at play have been available to Swearingen since 2012, at least."). To the extent that Speer makes a facial or freestanding lethal injection claim or challenges the use of purportedly expired pentobarbital as in the 2017 *Whitaker* decision, he is time-barred. Compl. at 13-20, *Whitaker*, 862 F.3d at 499.

Moreover, Speer's complaints about violations of Texas state law also appear to be time-barred. As explained in the Murphy litigation, the state statutes generally cited by lethal-injection opponents have been in effect for many years. Opp. Stay at 7–8, *Murphy v. Lumpkin, et. al.*, No. 1-23-cv-01199-RP (W.D. Tex.), ECF No. 7. Thus, Speer's state law claims were previously available and are now time-barred.[6]

### 2. Speer lacks a valid claim under the Eighth Amendment and Article 43.24.

Speer contends that Article 43.24 of the Texas Code of Criminal Procedure affords him the right to be free from torture, ill treatment or unnecessary pain. Compl. at 29. Speer asserts that this statute creates a liberty interest for him and "the State's continual denials of [Speer]'s requests for information or for a forum in which to conduct a factual inquiry into the

---

[6]    Speer might respond that the fire on which he relies occurred on August 25, 2023. But that fire cannot resurrect these long-available claims.

integrity of the pentobarbital supply in the wake of the Huntsville fire violates the Fourteenth Amendment's guarantee of procedural due process." Compl. at 30; *see also Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009) ("[f]ederal courts may upset a State's postconviction procedures only if they are fundamentally inadequate to vindicate the substantive rights provided").

Speer asserts that he can evade the mountain of controlling precedent foreclosing relief on method-of-execution challenges because he is seeking relief under the Due Process Clause. Specifically, he asserts that Texas's postconviction procedures are inadequate to validate a purported liberty interest under Article 43.24. But this is a distinction is without a difference. The CCA has authoritatively construed method-of-execution claims raised in state court to require the same analysis that the Supreme Court employs for Eighth Amendment claims. *Ex parte Chi*, 256 S.W.3d 702, 703 (Tex. Crim. App. 2008); *Ex parte Murphy*, No. AP-77,116, 2023 WL 6586973, at *2 (Tex. Crim. App. Oct. 9, 2023), *cert. denied sub nom. Murphy v. Tex.*, No. 23-5740, 2023 WL 6573352 (U.S. Oct. 10, 2023).

Speer acknowledges that Jedidiah Murphy made Article 43.24 arguments in his last-minute litigation earlier this month, and the state courts

allowed Murphy's execution to uneventfully[7] proceed after engaging in the Eighth Amendment analysis. Mot. at 14–15. But Speer argues that the state courts overlooked or refused to engage with Murphy's Article 43.24 claim. He further asserts that the trial court in his own case did the same when it rejected his Article 11.05 application. Speer's contention is thus effectively that this Court should correct the state courts' oversight. But this Court does not sit as super state court. *Cf. Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). And, regardless, there is no oversight to correct. It is the state courts' prerogative to interpret state criminal statutes, and (again) the CCA has interpreted state law to require an Eighth Amendment analysis for method-of-execution claims. Article 43.24 is essentially the Texas statutory analogue to the constitutional prohibition against cruel and unusual punishment, so it is wholly unsurprising that the CCA would employ the same analysis that the federal courts use.

Of course, application of the Supreme Court's Eighth Amendment precedent is fatal to Speer's claim and dispels any notion that he has a viable

---

[7]      Juan A. Lozano and Michael Graczyk, *Texas executes man who questioned evidence presented at trial in deadly carjacking of elderly woman*, AP News, apnews.com/article/texas-execution-murphy-supreme-court-6d9cd44d7c7a6817d53e1bcb74e8534f (last accessed October 23, 2023) ("As the lethal dose of pentobarbital took effect, he took two barely audible breaths and appeared to go to sleep.").

liberty interest in Article 43.24. Indeed, the Supreme Court "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Bucklew*, 139 S. Ct. at 1124 (affirming denial of single-drug pentobarbital challenge); *see also Lee*, 140 S. Ct. at 2591 (holding that challenge to federal single-drug pentobarbital protocol was unlikely to succeed on the merits in preliminary injunction context). To make out an Eighth Amendment method-of-execution claim, an inmate must establish that the chosen method creates "a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). This requires showing "'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). An inmate must also provide a "'feasible, readily implemented'" execution-method alternative that is not "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 51–52).

The Fifth Circuit previously rejected challenges to Texas's prior three-drug lethal injection process. *See generally Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010). However, at this point, Texas is currently using a single-drug pentobarbital protocol, which is also acceptable. *Bucklew*, 139 S. Ct. at 1120,

1134; *Lee*, 140 S. Ct. at 2591; *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016) ("The reality is that pentobarbital, when used as the sole drug in a single-drug protocol, has realized no . . . risk" that it "is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.") (quotation omitted); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013); *Thorson v. Epps*, 701 F.3d 444, 447 n.3 (5th Cir. 2012) ("Though Texas recently adopted a one drug protocol—also acceptable under the flexible *Baze* standard—the method at issue here exactly parallels the one cleared for use in *Raby*."). Use of pentobarbital has been upheld by many courts. *See Ringo v. Lombardi*, 677 F.3d 793, 798–99 (8th Cir. 2012) (noting that challenges to the use of pentobarbital have been denied). Moreover, the Fifth Circuit has denied certificates of appealabilty on challenges to the Texas lethal-injection protocol. *See*, *e.g.*, *Rivas v. Thaler*, 432 F. App'x 395, 404–05 (5th Cir. 2011); *Kerr v. Thaler*, 384 F. App'x 400, 404–05 (5th Cir. 2010).

*Baze* and *Glossip* govern all Eighth Amendment challenges, whether facial or as applied, alleging that a method of execution inflicts unconstitutionally cruel pain. *Bucklew*, 139 S. Ct. at 1122–29. Even considering Speer's fire claim through the "as applied" lens, Speer has not adequately demonstrated a substantial risk of serious harm. In Jedidiah Murphy's recent case, the Defendants attached an affidavit and lab report *dated after the TDCJ fire* showing that the execution drugs were tested by an

independent laboratory and remain potent and sterile. Compl. at Ex. 18 (ECF No. 1-19); Def.'s Ex. A, *Murphy v. Lumpkin*, *et. al.*, No. 1-23-cv-01199-RP (W.D. Tex.), ECF No. 7-1 ("Records of Lab Testing Results Related to the Lethal Injection Drugs in TDCJ's Possession").

Moreover, Speer's claim that use of purportedly expired drugs violates the Eighth Amendment is foreclosed by Circuit precedent. *Whitaker*, 862 F.3d at 499 ("claim that using compounded pentobarbital after its [Beyond Use Date] risks severe pain [ ] does not include sufficient factual assertions to survive a motion to dismiss."); *Swearingen*, 2019 WL 3935285, at *3. Nevertheless, Defendants' lab report also undermines Speer's claim that TDCJ is improperly using expired drugs in its executions—the Defendants' testing shows that, even if Speer's allegation that the drugs are expired is true—which it is not—they remain potent and sterile. Speer asserts that the prison's testing was inadequate, but his argument is refuted by Jedidiah Murphy's uneventful execution. Moreover, Speer has wholly failed to identify an execution-method alternative that is not just "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 51–52). This failure to identify an alternative execution-method is fatal to both his fire claim, his expired drugs claim, and any assertion that he has a viable liberty interest in Article 43.24.

Here, the trial court correctly applied Supreme Court precedent and found that Speer offered nothing but speculation to support his claim. *Ex parte Speer*, No. 99F0506-005, slip op. at 2. The trial court correctly noted that a Dallas County trial court, the CCA, the Western District of Texas, and the Supreme Court had rejected similar claims raised during last-minute litigation leading up to the Jedidiah Murphy execution. *Id.* (citing *Ex parte Murphy*, No. W00-02424-M(D) (194th Dist. Ct. Dallas Cty., Tex. Oct. 5, 2023); *Ex parte Murphy*, 2023 WL 6586973, at *1; *Murphy v. Tex.*, 2023 WL 6573352; Ord. on Mot. Stay Execution, *Murphy v. Lumpkin*, *et. al.*, No. 1-23-cv-01199-RP (W.D. Tex. Oct. 6, 2023), ECF No. 9). Indeed, the fact that the Supreme Court allowed Murphy's execution to proceed under identical facts is dispositive of this matter, since it indisputable that four members of the Supreme Court do not consider the underlying issue worthy of certiorari. *Netherland v. Tuggle*, 515 U.S. 951, 952 (1995).

Moreover, the Fifth Circuit has found that, despite an Eighth Amendment right against cruel and unusual punishment, it does not violate due process for a state to not disclose certain facts that speculatively *might* lead to an Eighth Amendment violation. *Sepulvado*, 729 F.3d at 420 ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol. Perhaps the state's secrecy masks 'a substantial risk of serious harm,' but it

does not create one. Having failed to identify an enforceable right that a preliminary injunction might safeguard, Sepulvado cannot prevail on the merits."); *Whitaker*, 862 F.3d at 498 ("Disclosing information about the execution protocol 'so [they] can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest.' Lack of a cognizable liberty interest is fatal to the due process claim.").

As previously noted, Speer attempts to sidestep this controlling Circuit precedent by arguing that he is raising a due process claim and not an Eighth Amendment claim, Mot. at 8–9, but the analysis to vindicate the purported Article 43.24 liberty interest is the same under state court precedent, Speer has no viable liberty interest regardless of the constitutional provision implicated, and the reasoning underlying the decisions is equally applicable. Speer further claims his case is different because of a fire that broke out in the Walls Unit of TDCJ. Compl. at 5, 9–12. But that similarly speculative argument fares no better in creating a cognizable liberty interest. *See Whitaker*, 862 F.3d at 498 (finding that speculation of potential degradation of pentobarbital after the beyond-use-date failed to meet the *Baze* requirements). In any event, TDCJ tested its lethal-injection drugs after the fire and the drugs remain sterile and potent. Compl. at Ex. 18 (ECF No. 1-19).

Speer fails to demonstrate that lethal injection will cause an Eighth Amendment violation in his case or, congruently, that there is a liberty interest that Texas's procedures are "fundamentally inadequate to vindicate." *Osborne*, 557 U.S. at 69.

### 3. Texas's postconviction procedures are not "fundamentally inadequate" and do not violate due process.

Justice O'Connor described the role of state postconviction proceedings as follows:

> A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the States to provide such proceedings . . . nor does it seem to me that the Constitution requires the States to follow any particular federal model in those proceedings.

*Murray v. Giarratano*, 492 U.S. 1, 13 (1989) (O'Connor, J., concurring) (citation omitted); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1989) (states have no obligation to provide collateral review of convictions). "State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal." *Giarratano*, 492 U.S. at 10.

But more importantly, where a State allows for post-conviction proceedings, "the Federal Constitution [does not] dictate[] the exact form such assistance must assume." *Finley*, 481 U.S. at 555, 557, 559; *cf. Estelle v.*

27

*McGuire*, 502 U.S. 62, 67–68 (1991) ("federal habeas corpus relief does not lie for errors of state law") (internal quotation marks and citation omitted); *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003) (infirmities in state habeas proceedings do not state a claim for federal habeas relief); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001). Rather, as previously explained, "[f]ederal courts may upset a State's postconviction procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne*, 557 U.S. at 69.

*Osborne* was a case dealing with DNA procedures, and it is not apparent that its dictates apply in these circumstances. And Speer fails to provide any precedent that specifically holds that Texas's procedures are constitutionally inadequate under the Fourteenth Amendment to vindicate a liberty right under Article 43.24. Nevertheless, it is worth noting how narrow Speer's purported right is: "'*Osborne* severely limits the federal action a state prisoner may bring for DNA testing' and "'left slim room for the prisoner to show that the governing state law denies him procedural due process.'" *Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) (quoting *Skinner v. Switzer*, 562 U.S. 521, 525 (2011)). In fact, "every court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it." *Id.*

Here, the record plainly shows that Speer was afforded due process's core protections. *Ford v. Wainwright*, 477 U.S. 399, 413 (1986) ("'[t]he fundamental requisite of due process of law is the opportunity to be heard'") (citation omitted); *Tercero v. Stephens*, 738 F.3d 141, 148 (5th Cir. 2013) (federal habeas case extending core procedural due process protections to inmates seeking to prove that they are ineligible for the death penalty due to being underage, but noting that "states retain discretion to set gateways to full consideration and to define the manner in which habeas petitioners may develop their claims" and "'[d]ue process does not require a full trial on the merits'; instead, petitioners are guaranteed only the 'opportunity to be heard.'") (footnotes and citations omitted). In the instant case, Speer submitted an Article 11.05 application that included eighteen exhibits. Exs. to Appl. for Writ of Habeas Corpus, *Ex parte Speer*, No. 99F0506-005, slip op. at 2 (5th Jud. Dist. Ct., Bowie Cty., Tex.). This application was resolved on the merits by the state trial court. *Ex parte Speer*, No. 99F0506-005, slip op. at *1-3. Speer has filed a pending motion to file an original writ in the CCA. As in federal courts, a live hearing is not required on state habeas complaints. *Ex parte Murphy*, 2023 WL 6586973, at *1. The unsurprising fact that Speer's lawsuit was not successful does not mean he was not heard.

Speer's claim that he lacks a forum to air his claim is thus factually untenable. In addition to his Article 11.05 proceeding, Speer acknowledges

that other death row inmates are currently pursuing their state law claims in a civil suit emanating from Travis County. Compl. at 20–24. The CCA has entered a writ of prohibition to prevent the Travis County court from staying executions pending those civil suits, but the fact that Speer cannot obtain his desired results does not mean that the courtroom doors are closed or his access is not meaningful. Speer could have raised his state law claims in state court many years ago and obtained a ruling long before his execution was set. One who forces the State into a Hobson's choice by delaying a challenge to a long-known method of execution can hardly complain when his impending execution affords insufficient time to litigate his long-available claims. *Cf. Harris*, 376 F.3d at 417–18. Furthermore, the CCA has previously considered method-of-execution claims in the writ of prohibition context, *Ex parte Chi*, 256 S.W.3d at 703, and Speer has not availed himself of that legal avenue by seeking such a writ. The CCA likewise considered Jedidiah Murphy's direct appeal of the denial of his Article 11.05 application. *Ex parte Murphy*, 2023 WL 6586973. Speer has not filed such an appeal either. "[I]t may be 'difficult' as a practical matter 'to criticize the State's procedures when [the prisoner] has not invoked them.'" *Reed*, 598 U.S. at 237 (citing *Osborne*, 557 U.S. at 71).

Speer challenges the procedure by which his method-of-execution claim was denied and asks for a second bite at the apple by invoking the Due Process Clause. But the record establishes Speer had more than sufficient opportunity

to be heard and to prove his claims. Speer's lethal-injection claim did not fail because of a lack of opportunity to acquire or present evidence—Speer's claim failed because it is completely speculative and refuted by controlling law and the facts.

### 4.   Speer seeks improper mandamus relief.

This Court has no authority to mandamus or micromanage the prison's testing of the execution drugs, as envisioned by Speer's proposed order. Prop. Ord., ECF No. 10-1. Although Speer frames his requested relief as an injunction, his relief would effectively force the Defendants to create or adhere to a point-by-point plan, designed by Speer, detailing where they store the drugs used to execute him, for how long and at what temperature, and dictating what methods they are tested by. Such relief is not available to Speer because it "is in the nature of mandamus." *Norton v. Enns*, 2:14-CV-0040, 2014 WL 3947158, at *3 (N.D. Tex. Aug. 12, 2014). Federal courts "do not have jurisdiction to issue the writ against a state actor or agency." *Id.* (citing *Moye v. Clerk, Dekalb Cnty. Superior Court*, 474 F.2d 1275 (5th Cir. 1973)). "Instead, if relief is available to [Plaintiff], he must obtain it through a mandamus action or other appropriate action in the state courts." *Id.* Here, Speer is affirmatively seeking to compel the TDCJ to utilize his storage and testing methods of choice—mandamus relief. However, this Court lacks jurisdiction to compel TDCJ officials by writ of mandamus. *See, e.g., Waters v. Texas*, 747 F. App'x

259, 260 (5th Cir. 2019) (affirming a jurisdictional dismissal where the plaintiff sought mandamus relief against "Texas state officials to deregister her as a Tier I sex offender"). Moreover, it is doubtful Speer would be satisfied by any storage and testing protocol, designed by him or otherwise, because what he actually seeks is not to be executed at all.

Ultimately, "what plaintiff[] [is] demanding is that, in effect, [he] be permitted to supervise every step of the execution process. [He has] no such entitlement." *Whitaker v. Livingston*, 732 F.3d 465, 468 (5th Cir. 2013). Speer makes these demands without any proof that Defendants' protocol—which has been used for many uneventful executions involving inmates of varying ages and health—is inadequate. Injunctive relief must be narrowly drawn and extend no further than necessary to correct the alleged violation. 18 U.S.C. § 3626(a)(1)(A); *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015). Murphy's uneventful execution is demonstrated proof that Speer's purported liberty interest or Article 43.24 rights will not be violated by his execution. In fact, narrowly drawn relief would simply be to require the prison to execute Speer under the current protocol as it did Murphy—i.e., to maintain the status quo and just do what it has been doing all along. This Court should decline to substitute its own judgment on how to prepare for an execution for that of seasoned professionals.

### C.    Speer will not suffer irreparable harm.

In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Barefoot*, 463 U.S. at 893. Speer argues that his execution constitutes irreparable harm. Mot. at 10. But this is a § 1983 action, which means that Speer necessarily does not challenge the validity of his sentence. *Cf. Ochoa v. Collier*, 802 F. App'x 101, 106 (5th Cir. 2020), *cert. denied*, 140 S. Ct. 990 (2020). Indeed, it is worth noting that Speer has recently released his clemency application to the public and offered media explaining that he is taking responsibility for his crimes, so there is no question regarding his guilt.[8] Speer unequivocally killed Dickerson.

Even under the theories of his lawsuit, when Speer is executed, his sentence has only been lawfully fulfilled—that is not irreparable harm. Rather, the actual harm that Speer alleges is that will experience some pain during his execution. But "[s]ome risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the

---

[8]    *See Application For Commutation of Death Sentence to a Lesser Penalty, or, in the Alternative, a 180-Day Reprieve, and Request for an Interview and Hearing*, https://drive.google.com/drive/folders/1OxE6xe-u5mrdiwxb_N1jdHlwC1_KoWHS    (last accessed Oct. 21, 2023) (p.2: "Will profoundly regrets the choices he made, and the actions he took, that resulted in the deaths of Jerry Collins and Gary Dickerson;" p.27: "To gain membership in the gang, he killed prisoner Gary Dickerson"); *see also* Texas Defender Service, *Will Speer Video Submitted to the Texas Board of Pardons and Paroles on October 6, 2023*, https://www.youtube.com/watch?v=zIJpKQRZicg&ab_channel=TexasDefenderService    (last accessed Oct. 21, 2023) ("When Will was 22, he killed a prisoner, Gary Dickerson").

required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47. "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual.'" *Id.* at 50. Speer's claim is entirely speculative—he has no historical basis for suggesting that he will be tortured or caused unreasonable pain. Indeed, the prison's history, including the recent Murphy execution using the supposedly "fire-blighted" drugs, amply confirms the prison's capacity to handle Speer's execution in a safe and humane manner. "Here the [S]tate has not botched any execution since it instituted its protocol. But even if a mishap were to occur in [Plaintiff's] execution, that post-facto incident alone could not constitute evidence that he was sure or very likely to suffer needlessly ex ante." *Bible*, 739 F. App'x at 772.

### D.   The State and the public have a strong interest in seeing the state court judgment carried out.

The State has a "powerful and legitimate interest in punishing the guilty." *Calderon*, 523 U.S. at 556 (citation omitted). And the State has "an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 139 S. Ct. at 1133 (quotation omitted); *see Nelson*, 541 U.S. at 650 ("a State retains a significant interest in meting out a sentence of death in a timely

fashion"); *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) ("[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). Once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension." *Calderon*, 523 U.S. at 556. The State should be allowed to enforce its "criminal judgments without undue interference from the federal courts." *Crutsinger v. Davis*, 936 F.3d 265, 273 (5th Cir. 2019) (citations and internal quotations omitted).

Speer asserts that Dickerson's sister has expressed opposition to Speer's sentence, eliminating a justification for the execution. Mot. at 19 (citing Ex. 8, ECF No. 10-9). But that same family member testified for the State at Speer's punishment hearing and stated that her mother, who was deceased, was devastated by Dickerson's death. 13 RR 13. The sister's affidavit also mentions deceased siblings, whose opinions are unknown. Ex. 8, ECF No. 10-9. But even if these deceased individuals were categorically opposed to Speer's execution, the State retains its interest in deterring gang murders and prison violence, as well as seeing justice done for Dickerson.

Indeed, the public's interest lies in executing sentences duly assessed, and for which years of judicial review have found no reversible error. Speer has already passed through the state and federal collateral review process. The public's interest is not advanced by postponing Speer's execution any further, and the State opposes any action that would cause further delay. *Martel v.*

35

*Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original). Speer is a *twice* capital murderer. *Twenty-six years* after the commission of Speer's crime, justice should no longer be denied. *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).

Moreover, it bears repeating that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Thus, "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill*, 547 U.S. 585. As noted above, this lawsuit—belatedly filed *eight days* before the execution—is precisely the sort of "dilatory tactic" that the Supreme Court has suggested that this Court not entertain. Even if the Court does not consider Speer's dilatory behavior an independent ground for the denial of relief, it should still weigh heavily in the Court's analysis. Any stay should be denied.

## CONCLUSION

For the foregoing reasons, the Defendants ask that the Court deny any preliminary injunction or stay of execution. Alternatively, the Court should deny any stay *and* dismiss Speer's lawsuit. *See*, *e.g.*, *Bible*, 2018 WL 3068804, at *11 ("Because this lawsuit cannot proceed without a stay of [Plaintiff]'s execution date, dismissal of the action is warranted.").

36

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
   for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Attorney-in-charge                 <u>s/ Stephen M. Hoffman</u>
*STEPHEN M. HOFFMAN
Assistant Attorney General
Texas Bar No. 24048978
Southern District Bar No. 602073
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Stephen.Hoffman@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I do hereby certify that on October 24, 2023, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Joshua Freiman
Assistant Federal Public Defender
Capital Habeas Unit
Federal Defender for the Western District of Texas
919 Congress Avenue, Suite 950
Austin, TX 78701
joshua_freiman@fd.org

Marie Hanewinckel (pro hac vice)
Taryn Winston (pro hac vice)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Email: mhanewinckel@cov.com
Email: twinston@cov.com

s/ Stephen M. Hoffman
STEPHEN M. HOFFMAN
Assistant Attorney General
