United States District Court
Southern District of Texas
**ENTERED**
October 24, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIAM KEITH SPEER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-3958 |
| | § | |
| BOBBY LUMPKIN, et al. | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Facing an October 26, 2023, execution date, Texas death-row inmate William Keith Speer has filed a civil-rights complaint under 42 U.S.C. § 1983. (Docket Entry No. 1). Speer's complaint raises numerous concerns about the drugs that the Texas Department of Criminal Justice (TDCJ) will use to effectuate his death sentence. Speer has also filed a motion for a preliminary injunction. (Docket Entry No. 10). The defendants oppose any injunction but have not yet answered Speer's complaint. For the reasons discussed below, the Court **DENIES** Speer's motion for a preliminary injunction.

## I. BACKGROUND

While already serving a life sentence for capital murder, Speer killed fellow prisoner Gary Dickerson so that he could ingratiate himself with the Texas Mafia prison gang. As described by the Court of Criminal Appeals for the Fifth Circuit,

> [t]he leader of the gang . . . wanted Dickerson dead because he believed, incorrectly, that Dickerson had caused prison officials to intercept an incoming shipment of cigarettes—a valuable prison commodity. Speer volunteered for the job. He went to Dickerson's cell with Texas Mafia member Anibal Canales[1] on the pretext of smoking a cigarette with Dickerson. But once there, Speer choked Dickerson to death while Canales restrained his arms and feet. Speer later recapped to other

[1] Canales was also convicted of capital murder and sentenced to death for his role in the murder. *See Canales v. Stephens*, 765 F.3d 551, 558 (5th Cir. 2014).

> Texas Mafia members that he told Dickerson in his last moments, "don't fuck with the Texas Mafia, not even in hell."

*Speer v. Lumpkin*, 824 F. App'x 240, 242 (5th Cir. 2020) (footnote added). A jury convicted Speer of capital murder and he received a death sentence in 2001.

For over two decades, Speer has repeatedly challenged his conviction and sentence in both federal and state court. On July 17, 2023, the State of Texas set Speer's execution for October 26, 2023. (Docket Entry No. 1, Exhibit 2).

## II. THE COMPLAINT

With days remaining before his execution, Speer filed the instant lawsuit involving the drugs that Texas will use to carry out his lethal injection. (Docket Entry No. 1). Texas law specifies that a capital inmate's death sentence will be executed "by intravenous injection of a substance or substances in a lethal quantity sufficient to cause death and until such convict is dead." Tex. Code Crim. Pro. art. 43.14. Since 2012, Texas has used pentobarbital to effectuate its executions.

### A. TDCJ's Drugs and the Huntsville Unit Fire

The factual basis for Speer's lawsuit proceeds along two lines. First, Speer complains that the State intends to execute him using drugs that were allegedly damaged in a fire. Speer's complaint says that a fire broke out on August 25, 2023, at the Huntsville Unit—the location where TDCJ conducts executions. According to Speer's complaint, the fire caused significant damage to the third floor of the Huntsville Unit which houses the pharmacy. Speer assumes that TDCJ stores its pentobarbital in the pharmacy.[2] Speer states that the fire exposed Texas' supply of

---

2 Speer says that, during the fire, firefighters "donned self-contained breathing apparatuses and entered the burning building *in an attempt to retrieve the lethal injection chemicals*." (Docket Entry No. 1 at 11) (emphasis added); *see also* (Docket Entry No. 10 at 4) ("The drugs the correctional officer tried to save were expired."). The

pentobarbital to "excessively high temperatures (upwards of 1800° Fahrenheit), smoke, and water during the fire and suppression efforts, which lasted up to ten hours." (Docket Entry No. 1 at 5). Speer alleges that the fire caused the pentobarbital to degrade, which changes "its chemical structure" and turns it "into an entirely different chemical substance with a different pharmacological impact on the body." (Docket Entry No. 1 at 6).

Second, Speer alleges that the fire only exacerbated problems which already existed with the State's current supply of pentobarbital. Speer lists various other concerns with the drugs Texas will use to execute him: "The pentobarbital was stored under improper conditions; TDCJ acquired it via unlawful methods; TDCJ fails to comply with numerous state laws concerning possession of controlled substances; TDCJ conceals the identity of the pharmacy and laboratory it uses to compound and test pentobarbital; and—most disturbingly—the pentobarbital was already expired." (Docket Entry No. 1 at 6). Speer focuses most strongly on whether TDCJ's drugs are potent and reliable. All drugs have a beyond use date (BUD) which approximates when a drug might no longer be reliable. Speer alleges that the BUD for Texas' pentobarbital expired long ago. (Docket Entry No. 1 at 15-16).

**B. The Factual Basis for this Lawsuit**

The legal basis for Speer's complaint originates in his efforts to obtain information from Texas about the allegedly fire-damaged, improperly stored drugs. Texas law limits disclosure of many facts about executions. *See* Tex. Gov't Code Ann. § 552.1081; Tex. Code Crim. Proc. Ann. Art. 43.14(b). On September 18, 2023, Speer filed an initial Public Information Act (PIA) request about the pentobarbital TDCJ will use in his execution. (Docket Entry No. 1, Exhibit 27). TDCJ

report which he cites, however, does not make any reference to an aborted attempt to retrieve the lethal-injection drugs. TDCJ, in fact, has never disclosed where it stores the pentobarbital used in lethal injections.

subsequently told Speer that it had requested a decision from Texas's Office of the Attorney General (OAG) regarding the releasability of the information. TDCJ produced a letter brief explaining that the information Speer sought was confidential under state law. (Docket Entry No. 1 at 25). TDCJ, however, disclosed the following:

> The beyond use dates for the pentobarbital in the possession of the TDCJ at the time of the request are as follows:
>
> 2.5 Grams
> 2 vials BUD 09/27/2023
>
> 5 Grams
> 1 vial BUD 11/01/2023
> 6 vials BUD 12/27/2023
>
> The TDCJ has not yet determined the specific pentobarbital to be administered to your client.

(Docket Entry No. 1, Exhibit 28).

Speer has also sought information about the fire through the prison grievance process. TDCJ currently employs a two-step formal grievance process. *See Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004). A prisoner must pursue the grievance through both steps of TDCJ's process to satisfy the exhaustion requirement under the Prison Litigation Reform Act (PLRA). *See id*. Speer filed a Step 1 grievance on September 18, 2023, objecting to the use of any drugs in his execution which had been affected by the August 25. TDCJ denied the grievance on October 5, 2023, stating: "[A]n investigation was conducted. TDCJ confirmed there was no impact to the drugs used to perform executions. No further action is warranted." (Docket Entry No. 1 at 26). Speer immediately filed a Step 2 grievance. On October 244, 2023, TDCJ informed Speer's attorneys that his Step 2 grievance had been denied because all the requested information was confidential. (Docket Entry No. 15 at 6).

By October 4, 2023, TDCJ had apparently decided which of its stored drugs it would use in Speer's execution. TDCJ provided an affidavit from Director Bobby Lumpkin which contained "***lab testing results related to the lethal injection drugs currently in the possession on the TDCJ intended for use in the execution procedure*** . . . ." (Docket Entry No. 1, Exhibit 18 at 2) (emphasis in original). The results confirmed the potency of the drugs to be used in Speer's execution.

Speer, however, is not satisfied with those results. According to Speer, TDCJ must test every vial in its possession and do so within more-stringent parameters. (Docket Entry No. 1 at 17-18). Speer also alleges that TDCJ must provide more information about the possibility that its drugs were exposed to the Huntsville Unit fire, as well as other general concerns about the integrity of the drugs.

Speer has sought state relief in the 5th District Court of Bowie County, Texas through an Application for Writ of Habeas Corpus under Article I, § 12 of the Texas Constitution & Texas Code Of Criminal Procedure Article 11.05 ("Bowie County habeas application"). (Docket Entry No. 1, Exhibit 32). Speer's Bowie County habeas application involved many of the same factual allegations as the instant lawsuit. Speer's first claim and principal ground for relief, however, was that the use of allegedly expired and fire-damaged drugs violates the Eighth Amendment's Cruel and Usual Punishment Clause. (Docket Entry No. 1, Exhibit 32 at 44-49). Speer requested relief in the form of injunctive relief, discovery and disclosure of relevant information, an evidentiary hearing, and a declarative judgment stating that "TDCJ's use of expired drugs and drugs affected by the August 25, 2023 Huntsville Unit fire violates his rights and enjoin the use of such drugs in his execution." (Docket Entry No. 1, Exhibit 32 at 67).

The state district court denied his habeas application on October 12, 2023. (Docket Entry No. 1, Exhibit 33). Relying on Supreme Court precedent,[3] the state district court held that Speer had "only provided speculation with respect to his claims, and as such, [he] fail[ed] to meet the threshold requirement for relief." (Docket Entry No. 1, Exhibit 33 at 2). The Bowie County court forwarded Speer's application and other relevant material to the Texas Court of Criminal Appeals.

Speer indicates that he recently moved for leave to file an original state habeas application in the Texas Court of Criminal Appeals. (Docket Entry No. 1 at 27). Speer seeks to litigate substantially the same challenge that he raised in the Bowie County habeas application. *Ex parte Speer*, WR-59,101-05 (Tex. Crim. App.). Speer's original habeas application remains pending in the Court of Criminal Appeals.

**C. Speer's Complaint**

Speer filed the instant lawsuit on October 17, 2023. Speer sues: (1) Bobby Lumpkin, Director of TDCJ Correctional Institutions Division, in his official capacity; (2) Bryan Collier, Executive Director of TDCJ, in his official capacity; and (3) Kelly Strong, Warden of the Huntsville Unit where TDCJ will carry out his execution.

Speer's complaint raises one claim: "Texas Has Deprived Mr. Speer of His Liberty Interest without Adequate Process, in Violation of The Procedural Due Process Clause of the Fourteenth Amendment." (Docket Entry No. 1 at 28). Speer complains that "his attempts to gather information about the condition of the substances intended for use in his execution in the wake of the Huntsville Unit fire have been met with delay and obstruction by TDCJ." (Docket Entry No.

---

[3] In *Glossip v. Gross*, 576 U.S. 863, 877 (2015), the Supreme Court adopted two elements for an Eighth Amendment method-of-execution claim: (1) the method of execution must first "present[ ] a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers" and (2) the plaintiff "must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *See also Baze v. Rees*, 553 U.S. 35, 46-47 (2008).

1 at 25). Speer argues that state law has created a liberty interest to information about the lethal-injection drugs and process. Speer relies on Article 43.24 of the Texas Code of Criminal Procedure which prohibits "torture, or ill treatment, or unnecessary pain." Speer assumes that the creation of that right assumes a right to disclosure of information that would allow him to litigate a possible violation of it. Speer argues that the Texas courts have failed to provide "a forum in which to conduct a factual inquiry into the integrity of the pentobarbital supply in the wake of the Huntsville fire . . . ." (Docket Entry No. 1 at 31).

Speer seeks the following relief: (1) a preliminary injunction of the Defendants' use of drugs affected by the Huntsville fire in his execution; (2) a preliminary injunction of the Defendants' use of expired pentobarbital in his execution; (3) an order compelling discovery of documents related to the effects of the Huntsville Unit fire; (4) a declaration that use of expired drugs affected by the Huntsville fire would violate his constitutional rights; and (5) a permanent injunction enjoining the Defendants from using of "such drugs" in his execution. (Docket Entry No. 1 at 31-32). The Defendants oppose Speer's motion for a preliminary injunction. (Docket Entry No. 14). Speer has filed a reply. (Docket Entry No. 15).

## III. HISTORY OF LETHAL-INJECTION CHALLENGES

Speer's arguments come before the Court against a long background of lethal-injection challenges. For over two decades, inmates nationwide have brought various challenges to the method by which States conduct executions. Inmates often base their arguments on the Eighth Amendment's protection against cruel and unusual punishment. Federal courts have repeatedly found that an execution protocol using pentobarbital complies with Eighth Amendment requirements. *See Sepulvado v. Jindal*, 729 F.3d 413, 421 (5th Cir. 2013) ("[F]ederal courts of

appeals agree that pentobarbital-only protocols comport with the Eighth Amendment's prohibition against cruel and unusual punishment.").

Since Texas began obtaining pentobarbital from compounding pharmacies in 2013,[4] inmates have repeatedly brought challenges involving the source, viability, potency, and purity of the drugs. Court have uniformly rejected those challenges. For example, in one case the district court found that "the BUD merely approximates how long a drug is guaranteed to be reliable; its passage does not necessitate a change in the drug's reliability nor does it establish that the pain plaintiffs will suffer will be more cruel in character or intensity." *Whitaker v. Livingston*, 2016 WL 3199532, at *8 (S.D. Tex. 2016). The Fifth Circuit has rejected similar challenges based on the BUD and found that such complaints "fail[ed]to reach the Eighth Amendment bar on unnecessarily severe pain that is sure, very likely, and imminent." *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016); *see also Battaglia v. Collier,* No. 18-70005, 2018 U.S. App. LEXIS 2648, at *2 (5th Cir. Feb. 1, 2018); *Whitaker v. Collier*, 862 F.3d 490, 498 (5th Cir. 2017); *Ladd v. Livingston*, 777 F.3d 286, 289 (5th Cir. 2015); *Swearingen v. Collier*, 2019 WL 3935285, at *4 (S.D. Tex. 2019).

Courts in the Fifth Circuit have also consistently refused to find that the Constitution guarantees an inmate to discovery of information about the execution process. *See Garcia v. Collier*, 744 F. App'x 231 (5th Cir. 2018); *Trottie v. Livingston*, 766 F.3d 450, 453 (5th Cir. 2014); *Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014); *Campbell v. Livingston*, 567 F. App'x 287, 289 (5th Cir. 2014); *Sepulvado*, 729 F.3d at 418-19; *Whitaker v. Livingston*, 732 F.3d 465, 467

4 Compounding pentobarbital "involves dissolving an active ingredient—pentobarbital sodium salt powder—in a water-solvent solution. The mixture is processed into a liquid that can be injected." *Whitaker v. Livingston*, H-13-2901, 2016 WL 3199532, at *1 (S.D. Tex. June 6, 2016).

(5th Cir. 2013). Also, the Fifth Circuit has found that the Constitution does not obligate a State to retest the drugs before an execution. *See Wood*, 836 F.3d at 542.

This is not the first case raising a specific challenge to Texas' current supply of pentobarbital or raising concerns about the Huntsville Unit fire. Speer's complaint is similar to one recently litigated in the United States District Court for the Western District of Texas. *Murphy v. Lumpkin et al*, 1:23-cv-001199-RP-SH (W.D. Tex. 2023). Facing an execution date, Murphy argued that Texas intended to execute him using "damaged vials of fire-blighted, long-ago expired pentobarbital . . . ." *Murphy v. Lumpkin et al*, 1:23-cv-001199-RP-SH (W.D. Tex. 2023) (Docket Entry No. 1 at 5). Murphy's complaint raised Eighth Amendment, due process, and liberty interest claims. The Western District summarily denied a stay of execution. Murphy did not appeal that decision. The State of Texas executed Murphy on October 10, 2023. The record before the Court does not indicate any problem with the administration or effectiveness of the drugs used in Murphy's execution.

## IV. ANALYSIS

Speer's arguments can only proceed if the Court issues a preliminary injunction, temporary restraining order, or stay of execution. A federal court has inherent discretion when deciding whether to stay an execution or enter a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 434 (2009); 28 U.S.C. § 2251(a)(1).[5] In deciding whether to issue a preliminary injunction, a court must consider: (1) whether the movant has made a strong showing that he is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the

---

5 When inmates file motions requesting a preliminary injunction, a TRO, and a stay of execution, courts generally consider all the requests under either the preliminary-injunction or stay-of-execution standard. *See Wood*, 836 F.3d at 538; *Trottie*, 766 F.3d at 451; *Sell*, 561 F. App'x at 343. The requirements for a preliminary injunction are substantially similar to those for a stay of execution. *See Sells*, 561 F. App'x at 344.

public interest lies. *See Nken*, 556 U.S. at 425-26. "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill v. McDonough*, 547 U.S 573, 584 (2006).

**A. Equity**

Before turning to the specific *Nken* factors, the Court notes that Speer's pending motion depends on the operation of equity in his behalf. *See Hill*, 547 U.S. at 584. In the balance of equity, "dilatory behavior" may weigh heavily against a plaintiff. *Ramirez v. McCraw*, 715 F. App'x 347, 351 (5th Cir. 2017). Speer should have raised his complaints about the source, storage, potency, and effectiveness of the lethal-injection drugs long ago.

The Supreme Court has observed that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day." *Hill*, 547 U.S. at 584. The Supreme Court has recognized the "significant" problems created when death-row inmates delay in filing their § 1983 suits, stating that "federal courts can and should protect States from dilatory or speculative suits." *Id*. at 585. Speer has known for more than two decades that he would die by lethal injection. Over the years, numerous other inmates have raised challenges complaining about many of the concerns in this lawsuit. For example, Speer points to a lawsuit currently pending in a Travis County court in which several inmates have raised general complaints similar to those in this lawsuit. Speer is not a party to that lawsuit. Speer did "the very thing the plaintiff is not entitled to do . . . namely, to wait until his execution is imminent before

suing to enjoin the state's method of carrying it out." *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004).

Insofar as Speer's complaint focuses on whether the state courts violated his due process rights, those concerns only have arisen now because Speer did not litigate his lethal-injection arguments earlier. The Supreme Court has instructed that "[t]he proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). Speer's delay in bringing most of his concerns long ago alone warrants the denial of relief.[6]

**B. Irreparable Injury**

Generally, "the possibility of irreparable injury weighs heavily in the movant's favor" in a capital case. *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982). Nevertheless, the United States Supreme Court has ruled that an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run

6 The Defendants argue that Speer's general complaints about the lethal-injection drugs and about the violation of state law are barred by the relevant statute of limitations. (Docket Entry No. 14 at 18-19). While the Court does not deny the preliminary injunction on those grounds, the Defendants correctly observe that Speer could have raised his lethal-injection challenges much earlier.

its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)). The first *Nken* prong does not weight heavily in Speer's favor.

### C. Likelihood of Success

The remaining *Nken* factors weigh heavily against issuing a preliminary injunction. The likelihood of success is "arguably the most important factor" in the *Nken* analysis. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005). As discussed below, Speer's failure to show a likelihood of success "is fatal" to his motion for a preliminary injunction. *Lake Charles Diesel, Inc. v. General Motors Corp*., 328 F.3d 192, 203 (5th Cir. 2003).

The Court begins by noting what is *not* explicitly at issue in this lawsuit. Speer does not raise an Eighth Amendment argument that TDCJ will carry out his execution by cruel or unusual means. Still, the federal courts in this circuit have soundly rejected Eighth Amendment challenges to Texas' execution process and procedure. The pervasiveness of that precedent bears repeating. Federal courts have regularly allowed executions to proceed when inmates have raised similar complaints about the source, reliability, testing, or purity of the drugs. Even insofar as Speer raises concerns about the Huntsville Unit fire, the Western District of Texas refused to stay an execution raising various constitutional arguments based on its alleged impact.[7] While Speer now frames his lawsuit as one challenging his ability to raise his concerns under state law, the fact that federal courts have found the underlying arguments to be speculative and hypothetical hangs over this lawsuit.

Speer says he is "not challenging the method of execution—lethal injection—selected by Texas; he is challenging his inability to discover or obtain process on the State's plan to carry out

---

[7] The United State District Court for the Western District of Texas also rejected the same legal claim Speer raises in this lawsuit: that Tex. Code. Crim. Pro. 43.24 created a liberty interest and that "Texas courts do not provide any legal remedy to vindicate these liberty interests once an execution has been scheduled." *Murphy v. Lumpkin et al*, 1:23-cv-001199-RP-SH (W.D. Tex. 2023) (Docket Entry No. 1 at 32).

that method using an illegally obtained and long-expired drug that was recently subject to intense heat, smoke, and water which likely render the drug not fit for the purpose of a humane execution." (Docket Entry No. 10 at 9). According to Speer's unique twist on lethal-injection cases, "[t]he State's use of expired and fire-damaged drugs deprives Mr. Speer of his state-created liberty interest under [state law], which guarantees condemned prisoners freedom from the infliction of torture, unnecessary pain, and ill treatment." (Docket Entry No. 1 at 30). Speer then alleges that "Texas deprives him of the required due process" by not providing him a "bona fide, meaningful way to challenge that deprivation . . . ." (Docket Entry No. 1 at 30).

The Due Process Clause protects against deprivations of liberty and property interests. "State law is not a source of liberty interests that are substantively protected by the Fourteenth Amendment; rather, it gives rise to interests that are promised procedural protections by the Fourteenth Amendment." *Jordan v. Fisher*, 823 F.3d 805, 812 (5th Cir. 2016); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("Whatever liberty interest exists is, of course, a state interest created by California law. . . . [When] a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication."). Speer contends that he "seeks minimally adequate procedures to enforce unique Texas law created to protect the 'condemned.'" (Docket Entry No. 10 at 9).[8]

Speer is not the first inmate to seek constitutional protection in obtaining information about the execution process. Whether they have based those arguments on an ability raise an Eighth

---

[8] Speers contends that: (1) he has been denied "has been denied fair notice of the manner and means by which he will be executed in the face of credible evidence that the drugs available to TDCJ to perform his execution are expired and fire-damaged"; (2) denied "an opportunity to be heard" about the alleged denial of his state-law rights because the "courthouse doors have so far been shut" to him; (3) TDCJ has already somehow violated his rights by not changing how it stores and handles the drugs in compliance with findings made by a state court without jurisdiction which was overturned by the Court of Criminal Appeals. (Docket Entry No. 10 at 10, 11, 14). Speer emphasizes that a Texas state civil court entered a preliminary injunction based on some of these concerns, but the Texas Court of Criminal Appeals held that the court did not possess authority to stay executions. (Docket Entry No. 10 at 2); *see also In re State ex rel. Paxton*, 2023 WL 110625, at *1 (Tex. Crim. App. Jan. 4, 2023).

Amendment claim, *see Whitaker v. Collier*, 862 F.3d 490, 500 (5th Cir. 2017), or on Tex. Code Crim. Pro. art. 43.24, *see Swearingen v. Collier*, 2019 WL 3935285, at *1 (S.D. Tex. 2019), other inmates have alleged that they possess a constitutional right to information about their upcoming execution. Neither the Supreme Court nor any federal circuit court has recognized a due process or liberty interest right to information about the execution process. *See Whitaker*, 862 F.3d at 500; *Sepulvado v. Jindal*, 729 F.3d 413, 419 (5th Cir. 2013).

True, sometimes a state-afforded right creates a liberty interest in "procedures essential to the realization of the parent right." *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). Federal courts may only disturb a State's postconviction procedures if they are "fundamentally inadequate to vindicate the substantive rights provided." *Id*. at 69. Even if Tex. Code Crim. Pro. art. 43.24 somehow created a liberty interest, "the right it creates would be subject only to procedural protection." *Jordan v. Fisher*, 823 F.3d 805, 812 (5th Cir. 2016). Texas law allowed Speer to raise his habeas claims before the Bowie County court[9] and the Texas Court of Criminal Appeals. Texas provided an opportunity for Speers to be heard.

Speer, however, complains that "he lacks a bona fide, meaningful way to challenge" the lethal injection process and that he should be able to engage in "further testing to confirm that the drugs will not inflict torture, unnecessary pain, or ill treatment . . . ." (Docket Entry No. 15 at 13). The Constitution does not guarantee an inmate the unlimited ability to discover grievances and litigate them effectively. *See Lewis v. Casey*, 518 U.S. 343, 355-565 (1996); *see also Trottie*, 766

[9] Speer disputes the extent to which the Bowie County court addressed his arguments. But "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference." *Johnson v. Williams*, 568 U.S. 289, 298 (2013). When a state court issues a denial without elaborate discussion, federal courts presume that the state court adjudicated it on the merits. *See id.* at 301; *see also Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). The Bowie County court denied Speer's habeas application, signifying it had adjudicated and rejected his claims. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Speer has not shown that Texas fails to provide an adequate forum for the vindication of his rights.

F.3d at 452 (finding that uncertainty regarding the effect of an execution drug was not a "cognizable liberty interest" and, thus, did not trigger "a due process right to disclosure"). Any state-created liberty interest in this case would be cemented in Speer raising a viable argument that his execution will not proceed as it should. In that manner, Speer's arguments suffer the same fatal flaw as in the other cases routinely denied by the federal courts: Speer relies on speculation and hypothetical risks. *Whitaker*, 862 F.3d at 501.

Speer says that "Defendants know but will not tell Mr. Speer which drugs TDCJ will use" or tell him "the condition of the drugs." (Docket Entry No. 10 at 19). That is not true. TDCJ has disclosed the same information it has in other cases. *See Campbell v. Livingston*, 567 F. App'x 287, 289 (5th Cir. 2014) (noting what TDCJ has turned over). TDCJ turned over "lab testing results related to the lethal injection drugs currently in the possession of the TDCJ intended for use in the execution procedure . . . ." (Docket Entry No. 1, Exhibit 18 at 2). The test results show that the drugs TDCJ will use have passed sterility and potency testing. (Docket Entry No. 1, Exhibit 18). TDCJ has told Speer that the fire did not "impact the drugs used to perform executions." (Docket Entry No. 1 at 26). Speer's lawsuit rests on the assumption that TDCJ has lied or that he can somehow discover some defect in the drugs.

Speer's general concerns about the source and reliability of the drugs covers well-trodden ground. The federal courts have repeatedly and uniformly found them to lack arguable merit. As the district court in *Whitaker* found when considering various arguments about the possibility of degradation in pentobarbital:

> The plaintiffs made some assertions about the therapeutic use of old pentobarbital but did not plead any facts about the rate of degradation of compounded pentobarbital. . . . Texas administers two and a half times the amount of the drug needed to kill a person. Alleged complications that develop days or years after a therapeutic dose does not establish that [the plaintiffs] will face an intolerable risk of pain during the score of minutes it takes for the lethal dose to kill them.

> [The plaintiffs] seem to claim that there is something inherently wrong with using compounded pentobarbital after the BUD. The BUD merely approximates how long a drug is guaranteed to be reliable; its passage does not necessitate a change in the drug's reliability nor does it establish that the pain plaintiffs will suffer will be more cruel in character or intensity.

*Whitaker*, 2016 WL 3199532, at *8. The Fifth Circuit affirmed and found that the inmate's "assertion fail[ed] to reach the Eighth Amendment bar on unnecessarily severe pain that is sure, very likely, and imminent." *Whitaker*, 862 F.3d at 498.

Speer alleges that the State should use different or better testing on the drugs. Speer's concerns about the State's testing are not fundamentally different than those unsuccessfully raised in other lawsuits. *See Wood*, 836 F.3d at 540 ("However one kneads the protean language of equal protection jurisprudence, the inescapable reality is that these prisoners have not demonstrated that a failure to retest brings the risk of unnecessary pain forbidden by the Eighth Amendment."). The Fifth Circuit in *Whitaker* specifically found that the Constitution did not require retesting under the same standards Speer requests in his complaint. *See id*. Speer's general concerns about problems with the lethal-injection drugs are substantially similar to ones which the courts have rejected before. Speer has not shown how basing his allegations on a different legal basis provided any greater likelihood that he will suffer during his execution.

Importantly, Speer provides only conjecture that the lethal-injection drugs have been exposed to high temperature or other problems due to the Huntsville Unit fire. Speer says "that an uncontrolled building fire catastrophically damaged the third floor of the Administration Building at the Huntsville Unit of the Texas Department of Criminal Justice (TDCJ)." (Docket Entry No. 1 at 6). TDCJ has never disclosed where it stores the lethal-injection drugs. *See Murphy v. Lumpkin et al*, 1:23-cv-001199-RP-SH (W.D. Tex. 2023) ("Murphy provides no independent evidence showing that TDCJ stores its pentobarbital in the Huntsville Unit or that, even if stored

there, the drug was impacted by the fire.").[10] Still, in light of the State's testing regarding the potency of the drugs Speer must offer something aside from speculation that his rights will be violated. *See Sells*, 750 F.3d at 480-81). In that respect, Speer's arguments fail for the same reason court have routinely refused to stay executions—his allegations rest only on speculation and hypothetical possibilities of error in the execution process.

In sum, Speer has not shown a likelihood of success on the merits. Speer's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for" a preliminary injunction. *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019).

**D. Other Interested Parties/Public Interest:**

The remaining two *Nken* factors weigh against Speer. The State's interest in enforcing its valid judgment against Speer outweighs his request for more time. "[E]quity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Crutsinger*, 930 F.3d at 709 (citing *Hill*, 547 U.S. at 584). Issuing an injunction at this late point would thwart the State's interest in carrying out an otherwise valid sentence and would impair the finality of the state court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *In re Fed.Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). Finally, the public has an interest "in timely enforcement of the death sentence." *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).

---

10 In his motion for a preliminary injunction, Speer cites reports he has attached to his complaint and says: "TDCJ stores its pentobarbital in a pharmacy on the third floor of the Administration Building at the Huntsville Unit." (Docket Entry No. 10 at 4). The reports Speer cites, however, do not specify where TDCJ stores its lethal-injection chemicals in the Huntsville Unit. Despite his statements, Speer provides no evidence that TDCJ stores its chemicals on the third floor of the Huntsville Unit, and more particularly in an area that had been exposed to the fire.

The *Nken* factors weigh against granting Speer's motion for a preliminary injunction.

## V. CONCLUSION AND ORDER

Over the past twenty-two years, Speer has extensively litigated numerous issues in state and federal court. Now, only days before the State executes his death sentence, Speer expresses concern about how it will do so. TDCJ told Speer that the Huntsville Unit fire did not impact the drugs it will use to carry out his execution. TDCJ has turned over results showing that those drugs are potent and stile. Having considered all of his arguments, Speer has not shown that this is an extreme case which requires the unusual step of issuing an injunction that would prevent the State from carrying out the valid judgment against him. The Court will not issue a preliminary injunction.

For the reasons described above, the Court **ORDERS** as follows:

1. Speer's motion for a preliminary injunction is **DENIED**. (Docket Entry No. 10).
2. The Court **GRANTS** the Defendants' Motion to Exceed the Page Limits. (Docket Entry No. 13).
3. Speer may proceed *in forma pauperis* in any appeal in this case.
4. All other requests for relief are **DENIED**.

The Clerk will provide copies of this Order to the parties.

SIGNED on October 24, 2023, at Houston, Texas.

ALFRED H. BENNETT
UNITED STATES DISTRICT JUDGE